W & F TRANSPORTATION, INC.,
E.H. Wilhelm, Sr., and Margaret
Wilhelm, Appellants,

v.

Cindy and Ricky WILHELM,
Appellees.

No. 14–03–00103–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 5, 2006.

**12.** Because of this disposition, we need not address the other challenges presented.

34

Robert G. Miller, William C. Ferebee, Houston, for appellants.

Michell S. Bradie, Peter R. Bradie, Magnolia, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## MAJORITY OPINION ON REHEARING

ADELE HEDGES, Chief Justice.

We grant the motion for rehearing filed by appellants W & F Transportation, Inc., E.H. Wilhelm, Sr., and Margaret Wilhelm (collectively "appellants"). On rehearing, we hold that Texas Rule of Appellate Procedure 34.6(c) and the precedent governing partial records does not apply in this case, where the only omission from the record is (1) the nonevidentiary argument of counsel, (2) which was not recorded pursuant to the parties' agreement to dismiss the court reporter, (3) where neither party has assigned error arising from counsel's argument or otherwise suggested that those arguments are relevant to our analysis. We accordingly review the issues appellants have raised on appeal.

In eleven issues, appellants appeal a jury verdict awarding appellees Cindy and Ricky Wilhelm ("Cindy and Ricky" or "appellees") actual and punitive damages in the amount of $33,773.39, plus attorney's fees, postjudgment interest, and costs. After reviewing appellants' issues, we affirm in part, reverse in part, and render judgment dismissing the claims against E.H. Wilhelm, Sr. and Margaret Wilhelm. The opinion issued in this case on March 24, 2005 is withdrawn, and the following opinion is issued in its place.

## I. REHEARING OF APPLICATION OF RULE 34.6(c)

In the opinion first issued in this case, we held that appellant's failure to comply with Rule 34.6(c) in a case where the parties agreed not to record closing arguments waived appellants' right to appeal. The opinion states:

> Because appellants did not request a partial reporter's record under this rule [34.6(c)], and because we do not have a record of the closing arguments at trial, we must presume the omitted portion of the record is both relevant to the disposition of this appeal and that it supports the trial court's judgment. Because we are unable to conduct a harm analysis without a record of the closing arguments, we affirm the trial court's judgment.

*W & F Trans., Inc. v. Wilhelm*, No. 14–03–00103–CV (Tex.App.-Houston [14th Dist.] Dec. 23, 2004, no pet. h.) (mem.op.). This holding focused on compliance with Rule 34.6(c); in the absence of compliance with that rule, we applied the common law presumption that omitted portions of the record are both relevant to and support the judgment on appeal (hereinafter "common law presumption"). Appellants filed a motion for rehearing and rehearing *en banc* challenging this holding.[1]

1. Members of the appellate bar also filed a Brief of Amici Curiae to argue that Rule 34.6(c) and the precedent relating to partial records should not be applied.

On rehearing, we hold that appellants were not required to comply with Texas Rule of Appellate Procedure 34.6(c) in order to avoid the application of the common law presumption and thus preserve their right to appellate review.

## A. The Proceedings in the Trial Court

The procedural issue in this case arises from a relatively innocuous agreement to dismiss the court reporter at the trial court's suggestion after the close of the evidence. Apparently, the court's customary court reporter was absent, and a deputy court reporter was working in her stead. This court reporter attended all of the evidentiary portions of the trial but was dismissed by the parties just prior to closing argument. She recorded all of the testimony introduced at trial and included all of the trial exhibits, and these materials have been included in the record on appeal. She also recorded the charge conference and the objections to the charge. It is not clear from the record whether the parties engaged in voir dire or opening statements; if they did, the court reporter did not record these portions of the trial either.

After the evidence closed and the court charged the jury, the trial judge asked counsel whether the court reporter could be dismissed prior to closing argument. Both parties agreed:

> Court: At this time I will now turn the case over to the lawyers for their closing arguments. Can we release the court reporter at this time?
>
> Mr. Bradie: Yes, your Honor.
>
> Mr. Ferebee: Yes, your Honor.

The parties thereafter offered closing arguments off of the record.

The jury returned a verdict. Appellants moved for a new trial and ultimately filed a notice of appeal. Appellants raised several arguments relating to the court's charge, the sufficiency of the evidence introduced at trial, and the judgment. Appellants have raised no issue relating to closing arguments, and appellees have not indicated that the content of closing argument is relevant to any of appellants' issues.[2]

## B. Agreed Nonevidentiary Omissions Pursuant to Rule 13.1(a)

■ We believe that this case is governed by *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 782 (Tex. 2005), in which the Texas Supreme Court held that a reporter's record of a pretrial hearing is necessary for the appeal only if the hearing being challenged on appeal is evidentiary. In *Holten,* the court refused to apply the common law presumption that an unrecorded pretrial hearing supported the judgment on appeal. *Id.* The court explained that the clear intent of Texas Rule of Appellate Procedure 34.1 is to require a reporter's record only where one is "necessary to the appeal." *Id.* (citing Tex.R.App. P. 34.1). The court held that refusing to presume that all unrecorded hearings support the judgment on appeal avoids the inefficient circumstance of requiring parties to record everything in order to show nothing relevant occurred. *Id.*

■ As the court explained, if a pretrial hearing is "nonevidentiary" and is instead merely the argument of counsel, the common law presumption should not apply:

> What is clear is that a reporter's record is required only if evidence is introduced in open court; for nonevidentiary hearings, it is superfluous.

---

2. The issue of the need to comply with Rule 34.6(c) was first raised by this court. On rehearing, appellees have also taken this position.

* * *

[R]equir[ing] *every* hearing to be recorded—whether evidentiary (to show what was presented) or not (to show nothing was) [would be] wasteful, [and] would frustrate the intent of our appellate rule requiring a reporter's record only "if necessary to the appeal."

*Id.* (quoting TEX.R.APP. P. 34.1). The court accordingly refused to "presume that evidence was presented that support[ed] the trial court's order." *Id.* at 781.

*Holten's* ruling and rationale are persuasive in this case, which like *Holten*, involves a record omission of counsel's arguments that is indisputably nonevidentiary.[3] Otherwise, the reporter's record before us is complete and contains all of the evidence introduced at trial.[4] That record contains all of the witness testimony heard at trial and all of the exhibits that the parties introduced into evidence. Under these circumstances, we are not willing to dismiss the appeal by applying the presumption that unrecorded nonevidentiary portions of trial such as closing argument support the judgment on appeal.

The fact that *Holten* addressed a pretrial hearing instead of a trial does not change our analysis. Pretrial hearings, such as the hearing held on personal jurisdiction in *Holten*, can be and often are dispositive. Indeed, pretrial hearings commonly concern matters, such as subject matter jurisdiction, that are essential to a court's power to act. *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004) (advising early

resolution of jurisdictional disputes). Nevertheless, the supreme court has held that these hearings do not need to be recorded and included in the record on appeal unless they are evidentiary. In *Holten*, the court stated that if "only arguments by counsel are presented in open court," a reporter's record of the proceeding is not needed. 168 S.W.3d at 782. We see no basis for treating the arguments of counsel that occur at trial after the evidence has closed any differently.

Rule 13.1 requires court reporters to "make a full record of the proceedings" unless "excused by agreement of the parties." TEX.R.APP. P. 13.1(a). As the court stated in *Holten*, because Rule 13.1 permits parties to dismiss the court reporter by agreement, it "implies an agreement that no record was made because none was needed." 168 S.W.3d at 782. In this case, we believe that no record was made because both parties agreed that none was needed. We will not now penalize appellants for making this agreement.

## C. The Common Law Presumption and Rule 34.6(c)

Historically, "[t]he burden [has been] on the appellant to see that a sufficient record [is] presented to show error requiring reversal." *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990) (citing former Texas Rule of Civil Procedure 50(d)). As a corollary to Rule 50(d), courts applied the common law presumption that whatever was omitted from the record was relevant to and supported the judgment on appeal.[5] As one court explained, "[i]t is

---

3. Although it is not clear from the record, it is also probable that the parties agreed not to record voir dire and opening statements. Assuming this is the case, our analysis applies to these nonevidentiary omissions from the record as well.

4. Texas Rule of Appellate Procedure 34.6(a)(1) defines the reporter's record as

"the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate."

5. One commentator has stated that "[t]his [common law] presumption appears to be carried forward by implication despite the repeal of former Rule 50(d), which expressly

the appellant who has the burden of bringing forward a statement of facts. Unless the record [on appeal] shows to the contrary, every reasonable presumption must be indulged in favor of the findings and judgment of the trial court." *Wright v. Wright*, 699 S.W.2d 620, 622 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.).

Rule 34.6(c) was developed in order to avoid the common law presumption. *See Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex.1991); *Christiansen*, 782 S.W.2d at 843. The rule specifies a set of procedures that apply when "the appellant requests a partial reporter's record." Tex.R.App. P. 34.6(c)(1). In relevant part, Rule 34.6(c)(1) provides:

(1) Effect on Appellate Points or Issues. If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues.

(2) Other Parties May Designate Additions. Any other party may designate additional exhibits and portions of the testimony to be included in the reporter's record.

\* \* \*

(4) Presumptions. The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues.

Tex.R.App. P. 34.6(c)(1)-(2), (4). The rule mandates a codified presumption—"that the partial reporter's record ... constitutes the entire record"—to replace the common law presumption.

placed the burden on an appellant or other party seeking review to see that a sufficient record is created to show reversible error." John Hill Cayce, Jr. & Anne Gardner, *Civil*

■ The purpose of Rule 34.6(c) is to protect an appellee from having to defend an appeal without parts of the record that support its defense. The statement of points or issues mandated by Rule 34.6(c) gives an appellee notice of the issues to be appealed, so that it can designate additional portions of the record that may be necessary for its case. "Compliance with the rule ... affords the opposing party an opportunity to designate additional material to be included in the statement of facts which it deems relevant to the issues on appeal, as defined by appellant." *Superior Packing, Inc. v. Worldwide Leasing & Fin., Inc.*, 880 S.W.2d 67, 70 (Tex.App.-Houston [14th Dist.] 1994, writ denied). "Absent such a specific statement [of points or issues], the Appellee is left to guess which additional portions of the evidence should be included in the statement of facts." *Gardner v. Baker & Botts, L.L.P.*, 6 S.W.3d 295, 296–98 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

Non-compliance with Rule 34.6 and application of the common law presumption ordinarily has the practical effect of destroying an appellant's right to appeal. "The application of this presumption often triggers very severe consequences." *Middleton v. Nat'l Family Care Life Ins. Co.*, No. 14–04–00428–CV, 2006 WL 89503, at \*2 (Tex.App.-Houston [14th Dist.] Jan. 17, 2006, no pet. h.) (mem.op.); *see also Superior Packing*, 880 S.W.2d at 70 ("Over the years, limiting the record on appeal has become hypertechnical, risky, and a close encounter with malpractice. This is because of the disastrous consequences which result if an appellant does not follow the procedures explicit and implicit within the rule." (citations omitted)).

*Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, 49 Baylor L.Rev. 867, 922 (1997).

Courts, including this one, routinely apply the common law presumption when an appellant has filed a partial record but has failed to give the appellee notice of the points and issues to be appealed in compliance with Rule 34.6(c). *See Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 818 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Coleman v. Carpentier*, 132 S.W.3d 108, 111 (Tex.App.-Beaumont 2004, no pet.); *Superior Packing*, 880 S.W.2d at 70. Applying the common law presumption as a sanction is appropriate in these cases, because in each, the appellant omitted from the record evidence introduced at trial, potentially prejudicing the appellee in defending the issues on appeal. *See, e.g., Mason*, 154 S.W.3d at 820 (discussing inadequacy of notice of appellate issues that an appellant filed "four months after appellees' briefing had been completed"). It is not fair to let an appellant create a record containing only the portions of the evidence and transcript that support its arguments. Employing the common law presumption to require an appellant to either designate a complete record or provide notice of the issues it intends to appeal guards against this possibility.

The Texas Supreme Court, however, has rejected an approach of "strict compliance" with Rule 34.6 in order to avoid the effect of the common law presumption. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2003) (evaluating compliance with rule in terms of whether the appellee had been prejudiced). While acknowledging that the statement of points and issues remained necessary under the rule, the court approved a statement that had been filed two months late, holding:

> Here, the objective behind Rule 34.6(c)(1) was fully served. [Appellee] does not allege that he was deprived of an opportunity to designate additional portions of the reporter's record, nor does he assert that [appellant's] delay otherwise prejudiced the preparation or presentation of his case. Under these circumstances, we hold that Rule 34.6 does not preclude appellate review of [appellant's] legal and factual sufficiency issues.

*Id.* at 230. The court "reiterated [the] commitment to ensuring that courts do not unfairly apply the rules of appellate procedure to avoid addressing a party's meritorious claim" and refused to apply the common law presumption. *Id.* at 229.

### D. Rule 34.6(c) Does Not Apply In This Case.

■ Compliance with Rule 34.6(c) was unnecessary and would have served no purpose in this case. Because the material had been omitted by the agreement of both parties, appellees did not need notice of the points and issues on appeal or an opportunity to designate omitted parts of the record. *See id.* Even if appellants had provided notice of the points and issues as mandated by the rule, appellees could not have responded with a counter-designation. The omitted material simply did not exist to be included in the record because the trial court had dismissed the court reporter. This situation differs markedly from that contemplated by Rule 34.6(c), in which one party designates and submits only certain portions of an existing reporter's record when considering the issues it will appeal.

The reality of this case is that appellants requested that *all* of the existing reporter's record be included in the record on appeal. Texas Rule of Appellate Procedure 34.6(a)(1) defines the reporter's record, providing that "[i]f the proceedings were stenographically recorded, the reporter's record consists of the court reporter's transcription of so much of the proceedings, and any of the exhibits, that

the parties to the appeal designate." The entire record that the deputy court reporter transcribed is before this court. That record contains all of the witness testimony heard at trial and all of the exhibits that the parties introduced into evidence. It contains a transcription of the charge conference and the parties' objections to the jury charge. Under these circumstances, it was not necessary for appellants to comply with Rule 34.6(c)'s provisions governing "partial records." *See, e.g., 3519 McKinney, Inc. v. Sheets,* No. 05–95–00044–CV, 1996 WL 14080, at *3 (Tex. App.-Dallas Jan.2, 1996, no writ) (not designated for publication) ("What constitutes a 'partial statement of facts' [under Rule 34.6(c)'s predecessor, Rule 53(d) ] is not defined in the rules.").

We are not aware of any cases requiring compliance with Rule 34.6, or applying the common law presumption, when the only omission from the record is nonevidentiary.[6] To the contrary, other courts have refused to apply the common law presumption when a party failed to comply with Rule 34.6(c) but omitted a nonevidentiary portion of the reporter's record. In *Tovar v. Mazza,* No. 04–98–00387–CV, 1999 WL 174064, at *2 (Tex.App.-San Antonio Mar.31, 1999, no pet.) (not designated for publication), for example, the court distinguished between nonevidentiary omissions

such as voir dire and closing argument and evidentiary omissions such as exhibits, stating that "[b]ecause the [non-recorded] voir dire and closing statements are not evidence, it is doubtful they would have added anything to our decision." The court declined to presume that the nonevidentiary portions of the record supported the judgment. *Id.; see also Sheets,* 1996 WL 14080, at *1–2 (declining to presume that omitted voir dire, opening statements, and closing arguments supported judgment where "no evidence was omitted in this case"); John Hill Cayce, Jr. & Anne Gardner, *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure,* 49 BAYLOR L.REV. 867, 924 & n. 377 (1997) ("Voir dire and jury argument may be safely omitted from the request [for a reporter's record] if unchallenged on appeal.").

**E. The Common Law Presumption Should Not Be Applied.**

■ We will not apply the common law presumption that closing argument, omitted from the record because it was not recorded by agreement of the parties, is relevant to and supports the judgment on appeal. *Holten* compels this result, *see* 168 S.W.3d at 783, which is also consistent with the Texas Rules of Appellate Procedure. *See* TEX.R.APP. P. 13.1(a) & 34.1.

---

**6.** The cases upon which the dissent relies largely involve the omission of the *entire* reporter's record on appeal. *See Middleton,* 2006 WL 89503, at *1 ("There is no reporter's record of any part of the trial."); *Mason,* 154 S.W.3d at 818 (appellant "did not request any of the testimony or evidence received at trial" be included in the reporter's record); *Patel v. State,* No. 14–03–01082–CR, 2003 WL 22976186, at *1 (Tex.App.-Houston [14th Dist.] Dec. 18, 2003, no pet.) (not designated for publication) ("No record was made of trial in municipal court."); *Hiroms v. Scheffey,* 76 S.W.3d 486, 489 (Tex.App.-Houston [14th Dist.] 2002, no pet.) ("We are unable to address the merits of this claim because ap-

pellants did not ask the court reporter to type the trial proceedings transcribed."). All of the cases upon which the dissent relies involve the omission of some evidence. *See, e.g., Gardner,* 6 S.W.3d at 296 (reporter's record omitted testimony of three witnesses, among other things); *Robertson v. Tex. Dep't of Transp.,* No. 03–00–00167–CV, 2000 WL 1228025, at *1 (Tex.App.-Austin Aug.31, 2000, no pet.) (not designated for publication) (noting that evidence was presented during first day of trial when court reporter was not present). We do not find any of these cases persuasive in a circumstance where the only omission from the record is nonevidentiary.

Moreover, this holding is the only way to honor the Texas Supreme Court's admonition to interpret the rules in a manner that preserves a court's ability to review the merits of a party's claim. *See Bennett,* 96 S.W.3d at 229; *Schafer,* 813 S.W.2d at 155 (disapproving "hypertechnical" interpretation of Rule 53(d)). As the court stated in *Holten,* "[o]ur appellate rules are designed to resolve appeals on the merits, and we must interpret and apply them whenever possible to achieve that aim." 168 S.W.3d at 784.

Contrary to the dissent's discussion, we do not believe that Rule 34.6(c) and the precedent developed when a party fails to comply with that rule are controlling in this case.[7] For the reasons we have discussed, Rule 34.6(c) does not contemplate the circumstance where the parties have agreed to dismiss the court reporter. Moreover, the rule does not provide a remedy for addressing parts of the proceedings that were not recorded. Although the dissent seems to agree on rehearing that Rule 34.6(c) does not apply to this case, the dissent continues to rely on precedent developed under that rule, which applies the common law presumption when a party has failed to comply with Rule 34.6(c)'s requisites.

The primary problem with the dissent's approach is that it threatens to establish a precedent essentially preventing parties from ever agreeing not to record a nonevidentiary portion of trial. The dissent would hold that any nonevidentiary omission from the reporter's record must be presumed to support the judgment, because it is possible that counsel invited the argument of which he complains on appeal.[8] This approach would have the practical effect of denying an appellant the right to an appeal merely for agreeing that the court reporter need not record every aspect of trial proceedings.

This approach is neither fair nor efficient, and it ignores certain express provisions of the Texas Rules of Appellate Procedure. Our appellate rules give the parties a measure of control over the contents of the reporter's record. For example, only the clerk's record is essential to the appeal; the reporter's record need only be included in the appellate record "if necessary to the appeal." TEX. R.APP. P. 34.1. The dissent's approach ignores this particular provision, essentially holding that a record of everything that occurred at trial must be recorded and produced to preserve a party's rights on appeal.

The dissent's approach also compromises the flexibility apparent in the rules. The appellate rules provide many mechanisms for the parties to create the record on appeal. The record may be the product of the parties' agreement, or it may consist of an agreed statement of the case in lieu of a record. TEX.R.APP. P. 34.2 & 34.3. Any inaccuracies in the reporter's record may be corrected by agreement of the parties or referred to the trial court for resolution. TEX.R.APP. P. 34.6(e). Finally, as occurred in this case, pursuant to Texas Rule of Appellate Procedure 13.1(a), the court reporter may be "excused by agreement of the parties" from recording every aspect of the proceedings.[9] The dissent's

---

7. *See supra* note 6.

8. This speculative possibility was implicitly rejected in *Holten.* A special appearance like that in *Holten* is fraught with procedural death traps, and counsel is much more likely to waive his client's jurisdictional challenge

than is counsel likely to invite error during closing argument at the end of trial.

9. Contrary to the dissent's claim, this court did not hold that Texas Rule of Appellate Procedure 13.1 was void in *Nabelek v. District Attorney of Harris County,* No. 14–03–00965–

approach undermines this provision by threatening the complete loss of appellate rights.[10]

The dissent's approach would also foster unfairness. As a practical matter, when both parties agree not to record the argument of counsel, it is not fair to later deprive one party of its right to appellate review. Fairness is implicated because the rules do not warn that a waiver of appellate rights may occur if a party agrees to dismiss the court reporter under Rule 13.1(a). In this case, for example, if appellants had imagined that a summary dismissal awaited them on appeal, they certainly never would have agreed that the deputy court reporter could leave after the close of the evidence. In addition, although we do not suggest impure motives on the part of appellees in this case, the dissent's approach would invite a party to "game the system" by agreeing with a hapless opponent to forgo a reporter's record of nonevidentiary proceedings, knowing full well that the omission would guarantee affirmance on appeal.

This is not the result contemplated by the current rules. *See* Tex.R.App. P. 13.1(a). It also fails to reflect the reality of modern trial practice. In some cases, for example, it is judicially efficient to forgo recording of nonevidentiary proceedings such as discussions with the court or voir dire of prospective jurors. Under the dissent's ruling, a party could no longer follow this practice with any confidence that the agreement would not later be used to the party's detriment.

We do not agree that it is necessary for the court of appeals to be able to access and review everything that occurred at trial. This is not how our adversarial system is organized. Our legal system is premised upon finding truth through the adversarial process. When one party omits something relevant from the record or from argument, we rely on the other party to point out the omission. We address problems arising from trial under a system of assigned error; as an appellate court, we do not scour the record to look for problems to which the parties have not directed our attention. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

---

CV, —— S.W.3d ——, 2005 WL 2148999 (Tex. App.-Houston [14th Dist.] Sept. 8, 2005, no pet.). This court did not reach the issue of whether Rule 13.1 was void, but held instead that the appellant had failed to preserve for review the question of what Rule 13.1 required from court reporters. *Id.* *5, —— S.W.3d at —— ("By failing to request that the court reporter record the hearing *or object to the reporter's failure to record* . . . Nabelek has failed to preserve these issues for review. *See* Tex.R.App. P. 33.1(a)." (emphasis added)). On the facts of the current case, reliance on Rule 13.1 is appropriate and is not precluded by a prior holding of this court.

10. It is not credible to suggest that a party may protect itself on appeal by complying with Rule 34.6(c). As this case demonstrates, Rule 34.6(c) simply does not address the circumstance where the parties agree not to make a record in the first place. Requiring compliance with that rule would accomplish nothing. When the parties have agreed that a nonevidentiary part of the trial need not be recorded, a transcript of proceedings will not exist. Accordingly, the appellee would need no notice of what issues will be appealed, because the appellee could not counter-designate omitted portions of the record even if it wanted to. The appellee has already once agreed that those proceedings did not need to be recorded. On a related note, even if a party were to comply with Rule 34.6(c), it would not cure the problems of which the dissent complains. A court cannot order the record supplemented under Rule 34.6(d) when a record of the proceedings does not exist.

We do not believe that permitting the parties to agree to waive the transcription of nonevidentiary portions of trial threatens an appellate court's power to render accurate decisions. Parties have every incentive to preserve their rights to appeal by recording any part of the proceedings that may influence the outcome of trial or provide a basis for establishing appellate error. It is therefore unlikely that parties will fail to record proceedings that they may later need to use.

Contrary to *Holten*, the dissent would require the appellant to produce a record of counsel's argument in order to establish on appeal that he never invited the error of which he now complains. *See Holten*, 168 S.W.3d at 782 (requiring recording "would encumber thousands of routine hearings by requiring formal proof that no proof was offered"). We decline to endorse such an approach. In light of the flexibility apparent in the Texas Rules of Appellate Procedure and the Texas Supreme Court's admonition to "interpret and apply them whenever possible" to achieve the aim of "resolv[ing] appeals on the merits," *id.* at 784, we will not presume that closing arguments are relevant to and support the judgment on appeal. Accordingly, we will review the merits of the claims that appellants raise on appeal.

## II. BACKGROUND

This case arises from business dealings between Cindy and Ricky Wilhelm, and Ricky's father and stepmother, E.H. and Margaret Wilhelm. Cindy and Ricky first sued W & F Transportation, Inc., and then later amended their pleadings to add E.H. and Margaret as "individuals doing business as W & F Transportation."

Cindy and Ricky asserted claims for fraudulent inducement, fraud, identity theft, and breach of contract against all three defendants. The case was tried to a jury, and over objection, the court submitted a charge that did not name any one of the individual defendants, but merely inquired into the liability of "W & F Transportation," an entity that was not defined. The jury found that "W & F Transportation" breached the contract and committed fraud and identity theft, and awarded damages to Cindy and Ricky. Based on the jury's verdict, the trial court entered judgment that Cindy and Ricky recover $33,773.39 in damages; $58,095.00 in attorney's fees; plus interest and costs from W & F Transportation, Inc., E.H. Wilhelm, Sr., and Margaret Wilhelm, jointly and severally.

## III. ISSUES FOR REVIEW

In attempting to overturn this judgment, Appellants present the following issues for appellate review:

(1) Did the trial court err by submitting jury questions 1–5 because they are ambiguous?

(2) Did the trial court err by submitting jury questions 1–5 because they assume defendants are jointly and severally liable for one another's actions?

(3) Did the trial court err in rendering judgment against E.H. and Margaret because there was no jury question regarding their liability?

(4) Did the trial court err in rendering judgment because the judgment does not conform to the jury's verdict given that there was no liability question submitted for any one of the defendants?

(5) Did the trial court err in awarding judgment because Cindy and Ricky did not plead alter ego?

(6) Did the trial court err in rendering judgment against E.H. and Margaret under article 2.21 of the Texas Business Corporation Act?

(7) Did the trial court err by awarding punitive damages because Cindy and Ricky recovered no actual tort damages?

(8) Did the trial court err in submitting question 6 to the jury because there is no causal connection between question 6 on damages and question 2 on liability?

(9) Did the trial court err in rendering judgment against Margaret because there is no evidence as to her liability on any claim?

(10) Did the trial court err in denying the motion for judgment notwithstanding the verdict because there is no evidence of fraudulent intent?

(11) If Cindy and Ricky are arguing a partnership theory, then did the trial court err in rendering judgment based on a partnership because there is no evidence of a partnership?

We sustain issue three. We also sustain issue four with respect to E.H. Wilhelm, Sr. and Margaret Wilhelm, but overrule issue four with respect to W & F Transportation, Inc. Because of our disposition of issue four, it is not necessary to address issues one, two, five, six, nine, and eleven. We overrule issues seven, eight, and ten.

### IV. Liability Findings

■ Appellants complain that the judgment imposing liability on E.H., Margaret, and W & F Transportation, Inc. is erroneous as to each defendant because appellees did not submit separate liability questions as to each of the three defendants. The jury charge in this case inquired only as to the liability of "W & F Transportation." The jury charge neither defined the term "W & F Transportation" nor separately inquired about the liability of either E.H. or Margaret, individually, or "W & F Transportation, Inc." Instead, the jury an-

swered questions only with regard to the liability of "W & F Transportation."

Specifically, the jury found that (1) "W & F Transportation fail[ed] to comply with the lease agreement that they entered into," (2) "W & F Transportation commit[ted] fraud against Ricky and Cindy Wilhelm," (3) "W & F Transportation wrongfully [took] Ricky and Cindy Wilhelm's identity," and (4) exemplary damages "should be assessed against W & F Transportation," considering among other things "[t]he degree of culpability of W & F Transportation." E.H. and Margaret are not mentioned in the charge, and neither is "W & F Transportation, Inc." The question presented by this appeal is to which defendant, if any, do the jury findings as to "W & F Transportation" refer.

■ When reviewing jury findings we must try to interpret the finding in a manner that supports the judgment. *See First Fed. Sav. & Loan Ass'n v. Sharp*, 359 S.W.2d 902, 903 (Tex.1962); *see also Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726, 733–34 (Tex.App.-Amarillo 2001, no pet.). To do so, we may examine the record in order to ascertain the jury's intent. *Carter v. Lee*, 502 S.W.2d 925, 929 (Tex.Civ.App.-Beaumont 1973, writ ref'd n.r.e.); *see also Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980) (apparent conflicts in jury answers must be reconciled if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole). We may not, however, speculate about what the jury intended in reaching a particular verdict or create certainty out of jury findings that are ambiguous. *See Carter*, 502 S.W.2d at 929 ("we cannot arrive at a conclusion with the certainty required of us").

■ Applying these principles in this case, it is clear to us that the jury's findings as to "W & F Transportation" re-

ferred to W & F Transportation, Inc. Here, most of the documents in the record refer only to "W & F Transportation," not to "W & F Transportation, Inc." In addition, counsel for the parties and all of the witnesses referred to the corporate entity simply as "W & F Transportation." This is true even though the trial testimony established that W & F Transportation had been incorporated since 1996. Under these circumstances, there is no real question that the jury intended at a minimum to impose liability on W & F Transportation, Inc. We accordingly hold that the judgment is proper as to W & F Transportation, Inc.[11]

■■■ We do not believe, however, that the term "W & F Transportation" can properly be understood to refer as well to E.H. and Margaret individually, along with also referring to the incorporated company. Appellees, as the parties seeking the liability finding, had the obligation to submit jury questions as to each individual defendant.[12] *See, e.g., Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.,* 879 S.W.2d 89, 100–01 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that in establishing liability, "it is the duty of the plaintiff to submit separate jury findings on damages" and it was error for

damages issues not to be "separated as to defendant"). Individual questions were particularly important considering the elements of the various claims in this case. Appellees were pursuing claims such as fraud and also seeking exemplary damages. *See St. Gelais v. Jackson,* 769 S.W.2d 249, 260 (Tex.App.-Houston [14th Dist.] 1988, no writ) ("Texas courts have long recognized the propriety of separate findings regarding the amount of exemplary damages, if any, to be assessed against each defendant.").

Appellees failed to submit individual questions, however, proceeding to verdict with a charge that inquired only into the liability of "W & F Transportation." On appeal, appellees maintain that findings as to each defendant were unnecessary because of a 1992 assumed name certificate. *See, e.g., A to Z Rental Ctr. v. Burris,* 714 S.W.2d 433, 436 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (holding that individuals doing business as an unincorporated entity are liable for the entity's obligations); *see also Salyers v. Tex. Workers' Comp. Ins. Fund,* No. 03–03–00011–CV, 2003 WL 22024670, at *2 (Tex.App.-Austin Aug. 29, 2003, pet. denied) (mem.op.) ("Because they do not enjoy the protection of corporate status, individuals who do business as

---

**11.** We reject any claim by appellants that these findings do not support the verdict against W & F Transportation, Inc. At the charge conference in the trial court, counsel for W & F Transportation, Inc. asserted that "W & F Transportation" as used in the charge meant defendant W & F Transportation, Inc. Counsel even requested that the parties enter a stipulation to this effect, or that the jury be instructed "that W & F Transportation means W & F Transportation, Inc." After taking this position in the trial court, appellant cannot now maintain that "W & F Transportation" should not be understood to refer to the incorporated defendant. In general, a party cannot take a position on appeal that is inconsistent with the position that it took in the trial court. *See, e.g., Rylander v.*

*Bandag Licensing Corp.,* 18 S.W.3d 296, 302 (Tex.App.-Austin 2001 pet. denied) ("A litigant may not take one position at trial, and then take an inconsistent position on appeal.").

**12.** We reject appellees' claim that appellants waived any objection to the charge. Our review of the charge conference reveals that counsel for E.H. and Margaret properly objected to the failure to inquire separately as to each defendant. This issue was discussed in the charge conference, including the existence of the assumed name certificate, the fact that the current charge referred to W & F Transportation, Inc. as the corporate defendant, and the need for separate questions for E.H. and Margaret.

an unincorporated entity are personally liable for the entity's obligations."); *Old Republic Ins. Co. v. EX–IM Servs. Corp.,* 920 S.W.2d 393, 396 (Tex.App.-Houston [1st Dist.] 1996, no writ) ("When an individual is doing business under an assumed name, a judgment rendered against the unincorporated association is binding on the individual."). We disagree.

The assumed name certificate does not override the need for separate findings as to the individual defendants in this case. Here, the evidence at trial established that W & F Transportation had been incorporated in 1996 and was thus incorporated at all times relevant to this lawsuit, which centers upon a dispute beginning in 2000. Two witnesses testified to W & F Transportation's incorporation, the 1996 certificate of incorporation was introduced into evidence, and there is no question that Cindy and Ricky were aware that W & F Transportation was incorporated.[13] In light of this, the assumed name certificate does not necessarily establish the individual liability of E.H. and Margaret. *See Negrini v. Plus Two Advertising, Inc.,* 695 S.W.2d 624, 631 (Tex.App.-Houston [1st Dist.] 1985, no writ) (holding that an assumed name certificate did not provide a basis for establishing individual liability after an entity became incorporated). An assumed name certificate demonstrating how an entity may have operated in the past does not establish the liability for an indeterminate time in the future, even if it

is misleading. *See, e.g., Bailey v. Vanscot Concrete Co.,* 894 S.W.2d 757, 759 (Tex. 1995) ("there is no authority for imposing tort liability on a party due to its failure to withdraw a misleading assumed name certificate"). The 1992 assumed name certificate has little significance considering the fact that W & F Transportation, Inc. became incorporated long before the parties in this case began the transactions at issue here.

■ Appellees also argue that E.H. and Margaret are precluded from objecting to individual liability because they failed to file a verified denial under Texas Rule of Civil Procedure 93(14).[14] This rule requires a verified denial "[t]hat a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged." TEX.R. CIV. P. 93(14); *see also Rhodes v. City of Austin,* 584 S.W.2d 917, 924 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.) (holding failure to deny allegation that individual was doing business under an assumed name meant that this allegation was not in issue). E.H. and Margaret did, however, file verified denials under Rule 93(2), alleging that they were not liable in the capacity in which they had been sued. The pleading that E.H. and Margaret filed is not defective because it is clear that E.H. and Margaret were relying on the W & F Transportation's corporate form to shield them from individual liabili-

---

13. The pleadings indicate that appellees had actual knowledge of W & F's corporate status. The original petition asserted claims only against "W & F Transportation, Inc.,"and appellees alleged that the incorporated company had participated in all of the facts underlying their causes of action, including entry into the lease agreement upon which many of the claims were based. (*See* Original Petition ("Wilhelms then entered into a lease agreement with W & F where for the use of their tractor and trailer in W & F business, W & F would pay the Wilhelms a portion of the rates

W & F received for hauling freight.").) Later petitions, including the petition upon which appellees went to trial, alleged facts involving merely "W & F," a defined term which also included the corporate entity.

14. We do not address any allegation that E.H. and Margaret were partners in a W & F partnership entity because appellees have conceded on appeal that they did not pursue liability under a partnership theory.

ty.[15]

Because the verdict in this case does not establish the individual liability of either E.H. or Margaret, it does not support the judgment entered by the court.[16] Under Texas Rule of Civil Procedure 301, a judgment must conform to the pleadings, the nature of the case, and the verdict. *See* TEX.R. CIV. P. 301; *American Ins. Co. v. Reed*, 626 S.W.2d 898, 901 (Tex.App.-Eastland 1982, no writ) (judgment rendered against various insurance companies, absent separate findings of liability, "failed to conform to the nature of the case proved and to the verdict of the jury" under Rule 301). Here, the judgment entered fails to conform to the verdict insofar as it imposes liability on E.H. and Margaret. We therefore reverse and render judgment that appellees take nothing from E.H. and Margaret. *See Reed*, 626 S.W.2d at 901 (any recovery against defendants not named in charge was waived).

## V. EVIDENCE OF FRAUD

Because we have upheld the judgment against W & F Transportation, Inc., it is necessary for us to address some of appellants' remaining issues. In their tenth issue, appellants assert that the evidence is legally insufficient to support a jury finding of fraudulent intent. The jury found that W & F Transportation committed fraud with respect to a transaction in which W & F Transportation induced Cindy and Ricky to pay $8,000 by requesting a loan that they promised to repay in two weeks, allegedly without any intention of doing so.

In reviewing a no evidence point, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex.2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827–28. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 819–21. We cannot substitute our judgment for that of the jury, as long as the evidence falls

---

15. A verified denial is not necessary if it is obvious in context that "the truth of such matters appear of record." TEX.R. CIV. P. 93. By filing a verified denial as to capacity, E.H. and Margaret were denying that they were liable as individuals because at all times relevant to this lawsuit W & F Transportation, Inc. was incorporated. *See, e.g., Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988) ("When [corporate] capacity is contested, Rule 93(2) requires that a verified plea be filed anytime the record does not affirmatively demonstrate the ... defendant's right to ... be sued."). E.H. and Margaret likely did not file a verified denial as to the allegation that they were doing business as individuals under an assumed name because they in fact had done business under that name at one point in time but now their company was incorporated. *See, e.g., Lambert v. Dealers Elec. Supply, Inc.*, 629 S.W.2d 61, 64 (Tex.App.-Dallas 1981, writ ref'd n.r.e.) (Guittard, C.J., dissent-

ing) (stating that "'d/b/a' does not indicate a separate legal capacity, and an individual doing business in an assumed name may be sued as an individual on any debt incurred in that name. The assumed name is only a matter of identification.").

16. Appellees have tried to establish a single business enterprise as a matter of law on appeal. Neither this theory nor any other theory for disregarding the corporate form was pled or submitted to the jury. Under these circumstances we will not address it. *See Schott Glas v. Adame*, 178 S.W.3d 307, 314 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("In Texas, corporate entities are presumed to be separate ... each basis for disregarding this presumption of corporate separateness must be specifically pleaded or it is waived." (citations omitted)).

within the zone of reasonable disagreement. *Id.* at 821–22.

Appellants argue that there is no evidence of fraudulent intent to support the jury's finding of fraud arising from appellants' agreement to repay a loan within two weeks. A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving and with no intention of performing the act.[17] *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434–35 (Tex. 1986); *Wingate v. Acree,* No. 14–01–00851–CV, 2003 WL 1922569, at *3–4 (Tex.App.-Houston [14th Dist.] Apr. 24, 2003, no pet.) (mem.op.). Though a party's intent is determined at the time of the representation, this intent may be inferred from the party's acts after the representation is made. *Spoljaric,* 708 S.W.2d at 434. Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made. *Id.* at 435. However, that fact is a circumstance to be considered with other facts to establish intent. *Id.* Because intent to defraud is not usually susceptible to direct proof, in most cases it must be proven by circumstantial evidence. *Id.* "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Id.* If a party denies ever having made the promise in question, that is a factor showing no intent to perform at the time the promise was made. *Id.* The fact that the defendant makes no pretense of performance may also be considered in showing a lack of intent. *Id.*

We conclude that the evidence is legally sufficient to support the jury's finding in this case. The evidence introduced at trial established that E.H. requested a loan in the amount of $11,000 from Cindy and Ricky. Cindy testified that E.H. told her that $8,000 of the loan would be used for payroll and repaid within two weeks, and that $3,000 of the loan would be used for chains, binders, and tarps for the truck on which they shared profits. Based on these promises, Cindy sent a wire transfer to W & F Transportation in the amount of $11,000. The $8,000 was not repaid within two weeks, and in fact has never been repaid. With respect to the $3,000, Cindy later learned that the tarps for the truck cost only $150.

E.H. denied making any promise to Cindy regarding the money. E.H. maintains that the $11,000 was not a loan, but was instead intended to be used as a down payment to purchase a second truck for Ricky. The evidence at trial demonstrated that E.H. purchased a truck in the name of Cindy's and Ricky's company and made several payments on that truck. Cindy maintained that this purchase occurred without their permission and that neither she nor Ricky gave W & F Transportation permission to purchase a truck on their behalf.

This evidence is sufficient to support the finding that W & F Transportation promised to repay the money within two weeks without intending to do so. The jury obviously credited Cindy's testimony and disbelieved E.H., finding, among other things, that W & F Transportation both committed fraud and misused Cindy's and Ricky's identity to purchase the truck. It is undisputed that W & F Transportation has never repaid the money and thus, has breach-

---

17. Establishing fraud requires (1) a material misrepresentation that was false, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) that was intended to be relied upon, (4) that was relied upon, and (5) that caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

ed the promise. It is true that the mere failure to perform a contract is not evidence of fraud. *Southern Union Co. v. City of Edinburg,* 129 S.W.3d 74, 92 (Tex. 2003). However, if a promise is breached, only slight circumstantial evidence of fraud—including a denial of making the promise in question—is necessary to support the jury's finding. *See Spoljaric,* 708 S.W.2d at 435. In this case, E.H. denied ever promising to pay this money back and maintained that it was actually forwarded for the purchase of a second truck. Considering the facts of this case, this denial and testimony regarding a different purpose for the money provides the necessary evidence that W & F transportation never intended to repay the loan as it had promised. *See Wingate,* 2003 WL 1922569, at *4 (use of assets for other purpose established intent not to repay); *Yeldell v. Goren,* 80 S.W.3d 634, 638 (Tex.App.-Dallas 2002, no pet.) (denial that money was owed and withdrawal of money for different purpose established intent not to repay). We accordingly overrule the tenth issue.

## VI. ISSUES RELATING TO DAMAGES

In their eighth issue, appellants assert that the trial court erred in submitting question six to the jury because there was no causal connection between question six on damages and question two on liability. Question six required findings as to damages for all causes of action. However, question six was predicated only on an affirmative finding to question two, liability for breach of contract. Although question six inquired about damages for fraud, it did not predicate an award of damages for fraud on the liability finding for fraud.

■ "To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety.

Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *see Byrne v. Harris Adacom Network Servs., Inc.,* 11 S.W.3d 244, 250 (Tex.App.-Texarkana 1999, pet. denied) (following standard set forth in *Island Recreational* ); *see also* TEX.R.APP. P. 44.1(a).

■ Although the conditioning language in question six on damages was erroneous, this oversight was not harmful and did not cause the rendition of an improper judgment. The jury found that W & F Transportation both breached the contract and committed fraud, and the jury awarded damages *both* for breach of contract and for fraud. Even though question six was predicated only on an affirmative finding for breach of contract, the question specifically asked the jury a question relating to the fraud damages, requiring the jury to find "[t]he sum of money W & F Transportation agreed to repay Ricky and Cindy Wilhelm." This language makes it clear that the jury did in fact find the damages attributable to the fraud claim, which was premised upon the fraudulent promise to repay the loan. Because it is clear from the language of the instruction that the jury found these damages as a result of finding fraud, any error in the conditioning language was harmless. We accordingly overrule the eighth issue.

■ In their seventh issue, appellants assert the trial court erred in awarding $3,000 in punitive damages because they claim that Cindy and Ricky recovered no actual tort damages. As discussed above, the jury expressly found fraud regarding the $8,000 loan and awarded Cin-

dy and Ricky $8,000 in damages on account of that fraud. This finding of fraud and award of damages arising from the fraud is sufficient to support the award of punitive damages. "If a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort." *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998) ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). We accordingly overrule the seventh issue.

### VII. CONCLUSION

We affirm the judgment of the trial court against W & F Transportation, Inc., and we reverse and render judgment that appellees take nothing from E.H. Wilhelm, Sr., and Margaret Wilhelm.

FROST, J., dissents.

KEM THOMPSON FROST, Justice, dissenting on rehearing.

What happens when the parties agree not to record some of the proceedings at trial and then the losing party seeks to reverse the trial court's judgment based on issues that relate to the unrecorded portion? The answer to this question determines the outcome of this case. In analyzing this issue, the court misstates and misapplies the general common-law rule governing the consideration and treatment of an appellate record that lacks portions of the trial proceedings. Furthermore, the court improperly infers an agreement by the parties that a record of closing arguments is not a necessary part of the appellate record.

The court makes three additional errors in analyzing the liability of E.H. and Margaret Wilhelm (hereinafter the "Individual Defendants"). Specifically, the court erroneously (1) concludes the Individual Defendants denied they were doing business as "W & F Transportation" by means of their verified denial of liability in the capacity in which they were sued, (2) states the trial court's judgment against the Individual Defendants should be reversed because "W & F Transportation," as used in the jury charge, could not have included them, and (3) fails to try to interpret jury findings to uphold the judgment after stating that this court must do so.

The court correctly concludes that issues seven, eight, and ten should be overruled; however, because the court sustains the third issue and part of the fourth issue and does not affirm the trial court's judgment in its entirety, I respectfully dissent.

**What is the effect of the parties' agreement not to have a record made of the proceedings during closing arguments?**

Just before closing arguments were to begin during the trial of this case, the parties' counsel agreed to release the court reporter, with the result that no record would be made of the proceedings during closing arguments. The main issue in this case is the effect of this agreement on the losing parties' appeal from the trial court's adverse judgment on a unanimous jury verdict and their challenge of the trial court's denial of their motion for judgment notwithstanding the verdict. As explained below, under the applicable common-law rule, omitted portions of an incomplete trial record are presumed to be relevant to the appellate issues and to support the trial court's judgment, unless this presumption is reversed by an exception to this rule, for example by the application of Texas Rule of Appellate Procedure 34.6(c),

governing appeals on partial reporter's records.[1] Appellants W & F Transportation, Inc., E.H. Wilhelm, Sr., and Margaret Wilhelm (hereinafter collectively the "W & F Parties") have not invoked or asserted any exception to the general rule. The majority errs in creating an exception for unrecorded closing arguments.

The parties trying a case, upon request, have a right to have a full record made of the trial proceedings. *See* TEX. GOV'T CODE ANN. § 52.046 (Vernon 2005) (requiring official court reporter to record proceedings if requested to do so); TEX.R.APP. P. 13.1(a) (stating that official court reporter must attend court sessions and make a full record of the proceedings, unless excused by agreement of the parties); *Nabelek v. Dist. Attorney of Harris Co.*, No. 14–03–00965–CV, —— S.W.3d ——, ——, 2005 WL 2148999, at *5 (Tex.App.-Houston [14th Dist.] Sept. 8, 2005, no pet. h.) (indicating that Rule 13.1(a) is void because it conflicts with section 52.046 of the Texas Government Code). They are also free to agree that all or part of the trial proceedings should not be recorded.[2] The Texas Rules of Appellate Procedure do not directly address the effect of such an agreement. However, a fundamental necessity for appellate review of trial proceedings is the ability to obtain a record of what occurred in the trial court. Absent the ability to review a complete trial record, appellate courts run the risk of undoing valid

and proper decisions of juries and trial courts because of the reviewing court's ignorance of what occurred during the unrecorded parts of the trial. To avoid this pitfall, appellate courts have established a common-law rule that the omitted portions of an incomplete trial record are presumed to be relevant to the appellate issues and to support the trial court's judgment, absent application of an appellate rule that would reverse this presumption. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990) (stating that "[a] reviewing court must examine the entire record in a case in order to determine whether an error was [reversible error]" and that if the predecessor rule to current Rule 34.6(c) does not apply, then "it will be presumed that the omitted portions [of the record] are relevant to the disposition of the appeal"); *Middleton v. Nat'l Fam. Care Life Ins. Co.*, No. 14–04–00428–CV, 2006 WL 89503, at *2 (Tex.App.-Houston [14th Dist.] Jan. 17, 2006, pet. filed) (stating that there was no reporter's record of the trial and holding that, because appellant did not comply with Rule 34.6(c) and the appellate record did not contain a complete record of the trial, this court would presume the omitted portions are relevant to the disposition of this appeal and support the trial court's judgment) (mem.op.); *Patel v. State*, No. 14–03–01082–CR, 2003 WL 22976186, at *1 (Tex.App.-Houston [14th Dist.] Dec. 18, 2003, no pet.) (affirm-

---

1. The existence of the general common-law rule is reflected in the language of Rule 34.6(c) itself. That rule states that, in an appeal under Rule 34.6(c), "[t]he appellate court must presume that the partial reporter's record designated by the parties constitutes the *entire record* for purposes of reviewing the stated points or issues." *See* TEX.R.APP. P. 34.6(c)(4) (emphasis added). Rather than stating that the portions of the record not included in the reporter's record are presumed not relevant to the appeal, the rule states that the partial record is presumed to

be complete. *See id.* In using this language, the Texas Supreme Court recognized the general common-law rule that appellate review of a complete record of the trial proceedings is the norm.

2. Throughout this opinion, the word "record" means "make a record of." This term is intended to cover the making of a record in general, regardless of whether the record is made stenographically, electronically, or otherwise.

ing trial court's judgment and holding that this court could not determine whether the trial court erred because this court lacked a "complete record" due to the court reporter's failure to make a record of the trial proceedings) (not designated for publication); *Robertson v. Tex. Dep't of Transp.*, No. 03–00–00167–CV, 2000 WL 1228025, at *1–2 (Tex.App.-Austin Aug.31, 2000, no pet.) (holding that, in case in which parties agreed that no record would be made of the proceedings during one day of a bench trial, appellate court did not have a complete record due to the absence of a record from that day and that, absent an agreed record or compliance with Rule 34.6(c), appellate court will presume the omitted portions of the record support the trial court's judgment) (not designated for publication).

The W & F Parties have not sought to appeal under Rule 34.6(c). They do not claim to have appealed under this rule, and they have not taken any of the steps to invoke this rule. *See* Tex.R.App. P. 34.6(c). The majority agrees that this is not a Rule 34.6(c) case and further concludes that, even if the W & F Parties had sought to invoke Rule 34.6(c), this rule does not apply to situations in which part or all of the proceedings are not recorded in the trial court. Although this court need not address this issue, even presuming that Rule 34.6(c) does not apply in such cases, the inapplicability of this rule would not change the general rule that the omitted portions of an incomplete trial record are presumed to be relevant to the appellate issues and to support the trial court's judgment, absent application of an appellate rule that would reverse this presumption. *See Middleton*, 2006 WL 89503, at *2; *Patel*, 2003 WL 22976186, at *1.

The majority concludes that the parties' agreement to dismiss the court reporter implies an agreement that no record of the closing arguments was needed. *See* 208 S.W.3d at 37. However, the subject matter of the parties' agreement was that the court reporter could be released. Nothing in the record reflects the parties' reasons, if any, for this agreement. Though this agreement implies that no record would be made of the proceedings during closing arguments, it is not reasonable to infer from this exchange an additional agreement that no record of the closing arguments was needed, particularly when such an inference contravenes the common-law presumption of relevance. If the majority's analysis were correct, then in both civil and criminal cases, parties could agree to forego recording part, or indeed all, of the trial and then still insist that appellate courts review their various appellate issues seeking to overturn the jury's findings or the trial court's rulings. This is not the law. *See Middleton*, 2006 WL 89503, at *2; *Patel*, 2003 WL 22976186, at *1.

Even more troubling is the court's willingness to infer an agreement not stated in the record. Courts should enforce agreements parties actually express and not undertake to find agreements that are not made manifest. Agreements parties make in the course of litigation usually have risks and consequences, and the decision to forego a court reporter for a portion of the trial is no exception. The consequences of the parties' agreement were foreseeable—even if unforeseen. The court's role on appeal is a neutral one—to hold the parties to the agreement they made, not to save parties from the consequences of their stated agreement by inferring an agreement that the parties did not express. This court should hold the parties to their agreement as stated on the record. Any other course will only create uncertainty and unfairness.

Although there are not many cases dealing with appellants who allowed a record not to be made of part of the trial and then sought to reverse the trial court's judgment, this deficit is likely attributable to the rarity of appellants choosing this unusual and risky course. It is a fundamental part of our system that appellate courts have the means to learn what happened during the trial whose result they are asked to overturn. Truth can be stranger than fiction, and to reverse a trial court's judgment based on a unanimous jury verdict without knowing what transpired during part of the trial would result in a waste of resources and the all-to-real potential for an unjust reversal of the trial court's judgment contrary to the truth. "Imperfect as it may be, our legal system attempts to ascertain facts to arrive at the truth." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 405 (Tex.1993) (quotations omitted). To dispense with the requirement that appellate courts have access to a record of what occurred during trial would be to abandon the truth-seeking function of the law. *See id.*

For example, in the case at hand, the court reverses as to the Individual Defendants based on the majority's conclusion that the undefined term "W & F Transportation," used throughout the jury charge, must have meant only W & F Transportation, Inc. However, this court does not know what transpired during closing arguments. In his closing argument, counsel for Cindy and Ricky Wilhelm (hereinafter "Cindy and Ricky") may have told the jury that "W & F Transportation" meant all three defendants. Counsel for the W & F Parties may have agreed with Cindy and Ricky on this point, told the jury that "W & F Transportation" meant all three defendants, and then argued the jury should find no liability because there was no evidence of any actionable conduct by Margaret Wilhelm. If this were so, then this court's reversal would be erroneous based on the W & F Parties' inviting the error that they assert on appeal. *See, e.g., Bass v. Walker,* 99 S.W.3d 877, 889 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (holding appellants could not complain of alleged error by trial court in allowing inadequate settlement credit of $100,000 because appellants specifically had requested that the trial court apply a $100,000 settlement credit during closing arguments, thus inviting the alleged error). Another possibility is that, during the unrecorded proceedings and without objection, the trial court may have told the jury that "W & F Transportation" meant all three defendants.

If either of these two scenarios occurred, then the jury properly found all three defendants liable, and the trial court properly denied the W & F Parties' motion for judgment notwithstanding the verdict, which was the sole means by which the Individual Defendants preserved the issues that the court today sustains. Because the W & F Parties have not reversed the general presumption that the omitted portions of the trial record are relevant and support the judgment, this court should presume that one of these two scenarios occurred, overrule the third and fourth issues, and affirm the trial court's judgment in its entirety. *See Christiansen,* 782 S.W.2d at 843; *Middleton,* 2006 WL 89503, at *2; *Patel,* 2003 WL 22976186, at *1; *Robertson,* 2000 WL 1228025, at *1–2; *see also Mason v. Our Lady Star of the Sea Catholic Church,* 154 S.W.3d 816, 818 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (stating that case involved partial record because it included closing arguments and charge conference but did not include the trial evidence and applying the common-law presumption that the omitted portions were relevant and supported the trial court's judgment

because appellant did not comply with Rule 34.6(c)); *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding, in absence of complete reporter's record or compliance with Texas Rule of Appellate Procedure 34.6(c), that court of appeals could not reverse based on charge error, in part because court of appeals could not review the closing arguments); *Gardner v. Baker & Botts, L.L.P.*, 6 S.W.3d 295, 296–98 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) (holding that complete record of trial was not provided because record lacked voir dire, opening statements, closing arguments, and some testimony and holding that, because appellants did not comply with the predecessor rule to Rule 34.6(c), the court of appeals had to presume that the omitted portions supported the trial court's judgment). Instead, the majority carves out a new exception to the common-law presumption for unrecorded closing arguments.

Although the majority sustains issue three and part of issue four, rather than issues one and two asserting charge error, the W & F Parties' arguments under all of these issues are substantially similar. The court also concludes that the Individual Defendants preserved error regarding the jury charge's alleged defect in referring to an undefined "W & F Transportation." *See* 208 S.W.3d at 45 n. 12. In this context, it is worth noting that alleged charge error is one of several instances in which appellate courts need to review the closing arguments, even if no error is alleged to have occurred during the closing arguments. *See, e.g., Timberwalk Apartments,*

*Partners, Inc. v. Cain*, 972 S.W.2d 749, 755–56 (Tex.1998) (stating that, in conducting harm analysis as to charge error, court reviews the entire record, including closing arguments, and finding reversible error, in part, based on closing arguments). This court previously has applied the common-law presumption to an appellate issue asserting that the jury charge contained an erroneous definition (analogous to the Individual Defendants' third and fourth issues, which the court sustains), in part because the appellate record did not contain a record of the closing arguments that would be needed to evaluate this issue. *See Hiroms*, 76 S.W.3d at 489. There is no justification for the majority's departure from this court's reasoning in *Hiroms*.

The W & F Parties do not dispute that they elected to forego a court reporter during closing arguments, nor do they dispute that they failed to appeal under Rule 34.6(c). Rather, they assert that it is common for parties, for the sake of economy, to agree that no record be made of closing arguments. How often parties make such agreements at trial is subject to conjecture, but if they do so, it should not be to save money. The parties are not required to pay anything to have a record made of the entire trial, and the court reporter (or court recorder as the case may be) is required to make a such a record upon request.[3] *See* TEX. GOV'T CODE ANN. § 52.046; TEX.R.APP. P. 13.1(a); *Nabelek*, 2005 WL 2148999, at *5. After trial, if a party files an appeal, that party ordinarily must pay to have the record transcribed. However, by following the procedures of

---

3. The W & F Parties also assert that a conclusion that the record is not complete would violate the plain meaning of Rule 13.1(a) that allows parties to agree not to record closing arguments. The court seems to agree. *See* 208 S.W.3d at 37–38, 41–42. Though Rule 13.1(a) allows the parties to agree that closing arguments, or any other parts of the trial, should not be recorded, that rule does not address the consequences of such an agreement. Therefore, there is no conflict between Rule 13.1(a) and the common-law rule as to the ramifications of an incomplete record.

Rule 34.6(c), a party appealing can save money by designating only the parts of the record that the party believes are relevant to the appellate issues. *See* TEX.R.APP. P. 34.6(c); *Williams v. Gage*, No. 12–03–00023–CV, 2003 WL 22839260, at *1 (Tex. App.-Tyler Nov.26, 2003, no pet.) (stating, in memorandum opinion, that an appellant may use the Rule 34.6(c) procedure to minimize expense and delay in the appellate process). An appellant who sufficiently complies with Rule 34.6(c) avoids the legal presumption that the portions omitted from the record are relevant and support the judgment. Under this rule, other parties and the appellate court itself may arrange to have transcribed the parts of the record that the appellant did not request. *See* TEX.R.APP. P. 34.6(c) & (d). On the other hand, neither an appellate court nor an appellee can have portions of the trial record transcribed if the parties agreed that no record of these portions would be made in the first place. Parties are free to economize by using the Rule 34.6(c) procedure, but agreeing to have no record made at all saves the parties no money, and, unlike consequences flowing from the operation of Rule 34.6(c), it prejudices the appellate court's ability to seek the truth and determine what happened at trial. If the parties decide, for whatever reason, that, come what may, they will not appeal the trial court's judgment, then they might reasonably decide not to have the trial recorded. Indeed, parties in arbitration often do not record the arbitration proceedings, and this decision makes sense given the arbitrating parties' inability to obtain any kind of traditional appellate review of arbitration rulings. However, if a party to a case in the court system wants to preserve its rights to full appellate review, then it should be sure to request that a record be made of the entire trial. *See Christiansen*, 782 S.W.2d at 843; *Middleton*, 2006 WL 89503, at *2; *Mason*, 154 S.W.3d at 818; *Patel*, 2003 WL 22976186, at *1; *Robertson*, 2000 WL 1228025, at *1–2. If parties wish to minimize costs on appeal, they are free to use the procedures of Rule 34.6(c).[4] However, when the parties agree that no record is to be made at all during all or part of a trial, they avoid no costs to themselves and they deprive the appellate courts and themselves of the ability to obtain a record of what transpired during the unrecorded portions of the trial proceedings.

Rather than requiring strict compliance with Rule 34.6(c), the Texas Supreme Court has adopted a flexible approach in certain cases in which a rigid application of Rule 34.6(c) would result in denying review on the merits, even though the appellee has not established any prejudice from a slight relaxation of the rule. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex.2002). This approach allows parties who have appealed on a partial reporter's record to use Rule 34.6(c) to reverse the general presumption, even though they have not strictly complied with Rule 34.6(c), for example by timely serving the statement of appellate issues on the other parties, provided the other parties have not shown prejudice from this failure to strictly comply. *See id.* The majority asserts that creating an exception to the common-law presumption as to closing arguments is the only way to honor this approach as articulated by the Texas Supreme Court in *Bennett*. *See* 208 S.W.3d at 39, 40–41 (citing

---

**4.** The majority erroneously states that the approach taken by this dissent requires parties who appeal to produce a record of everything that occurred at trial. *See* 208 S.W.3d at 41–42, 43. This dissent does not require parties who appeal to produce such a record, and these parties are free to use Rule 34.6(c) to avoid the inefficiency of transcribing parts of the trial record that are not needed to resolve the appellate issues. *See* TEX.R.APP. P. 34.6(c).

*Bennett,* 96 S.W.3d at 229). However, the *Bennett* approach, by its own terms, has limits. *See Bennett,* 96 S.W.3d at 229 (noting limit to *Bennett* rationale); *Mason,* 154 S.W.3d at 819–20 (applying common-law presumption despite *Bennett* rationale). The better course would be to recognize the limits of this approach and leave the creation of new rules of law to the Texas Supreme Court.

Furthermore, whether by agreement or otherwise, the failure to record parts of the trial proceedings that could relate to alleged reversible error asserted on appeal does not fit within this flexible approach because this failure substantively interferes with the appellate court's ability to properly review the merits. Moreover, all parties as well as the trial court and the jury are prejudiced when an appellate court reverses a judgment without having the ability to review a record of all the trial proceedings that could have affected the trial court's rendition of the judgment being reversed. If no record is made of parts of the trial, the reviewing court faces a dilemma in trying to deal with the gaps in the record and resolve the appellate issues. Trial counsel's perceptions of what occurred during trial may be influenced by conscious or unconscious bias. Counsel may have inaccurate memories regarding the details of what transpired during trials that may have occurred months or even years earlier. During an intense trial, counsel's notes of what occurred may be incomplete, inaccurate, or just plain wrong due to other human error. Trial counsel may not focus on trial occurrences that relate to those appellate issues that only

the opposing party plans to raise because counsel may not be aware of these issues until after trial. Trial counsel may not be available on appeal. All of these factors make it imprudent for appellate courts to rely upon the representations and recollections of trial counsel to cure gaps in the record of what transpired at trial. Furthermore, in this case, Cindy and Ricky have not conceded that what occurred during closing arguments is not relevant to the W & F Parties' appellate issues.

The merits of appellate points are not well served if an appellate court considers reversing a trial court's judgment without knowing what transpired at trial. This point is illustrated by a relatively recent case from this court in which the appellants asserted on appeal that the trial court erred in applying an inadequate settlement credit; however, during closing argument at the bench trial, the appellants themselves had requested that the trial court apply the credit of which they complained on appeal. *See Bass,* 99 S.W.3d at 889. No party on appeal mentioned that appellants had made this request during closing argument, and if this court had not had a record of closing argument, it might have reversed the trial court for awarding exactly the settlement credit requested by the appellants.[5] *See id.* Such a ruling would not have served justice, and would not have credited the work of the trial court in resolving the case.[6]

In sum, the court errs in failing to follow the common-law presumption regarding incomplete records and in treating an agreement to make no record of part of

---

5. The W & F Parties assert on rehearing that this court's original opinion presumed that counsel's closing arguments might have contained evidence that would support the judgment. It is not presumed that counsel's closing arguments constitute evidence, nor did the original opinion so state.

6. Though in the majority opinion the court relies on Rule 34.1, that rule does not state when a reporter's record is necessary. *See* Tex.R.App. P. 34.1; 208 S.W.3d at 41–42.

the proceedings more favorably than a failure to either follow Rule 34.6(c) or request the reporter to transcribe the entire record of the trial proceedings.[7] However, as discussed above, the former situation is much more inimical to proper appellate

7. Two amici curiae have filed a brief in which they cite five cases in support of the proposition that, even absent the application of Rule 34.6(c), the trial record is complete without a record of the closing arguments. These cases do not change either the analysis or the conclusion.

In *Stubbs v. Stubbs*, the Texas Supreme Court held that the failure to record proceedings at trial in violation of the Texas Family Code constitutes error on the face of the record in support of a writ-of-error appeal. *See* 685 S.W.2d 643, 644–46 (Tex.1985). While the *Stubbs* court stated that the failure to record oral testimony violated a section of the Family Code regarding the making of a record of all trial court proceedings, the *Stubbs* court was not required to and did not address whether a failure to record matters at trial other than oral testimony would violate this statute. *See id.* In an unpublished opinion in what appears to be a writ-of-error appeal, the *Heimendinger* court held that the appellant did not show on the face of the record that the trial court violated her due process rights in not recording voir dire, bench conferences, or closing arguments, in a case in which the appellant did not allege any other error by the trial court. *See Heimendinger v. Tex. Dep't of Prot. & Reg. Servs.*, No. 03–97–00079–CV, 1999 WL 274061, at *1–2 (Tex.App.-Austin May 6, 1999, pet. denied) (not designated for publication). The *Heimendinger* court's obiter dictum that the *Stubbs* court interpreted the Family Code to mean that all oral testimony must be recorded does not address whether a record is complete without closing arguments. *See id.* In the unpublished *Tovar v. Mazza* opinion, the court mentions the absence of voir dire, closing arguments, and the trial exhibits from the record and concludes that the court need not decide the effect of this incomplete record. *See* No. 04–98–00387–CV, 1999 WL 174064, at *1–2 (Tex. App.-San Antonio Mar.31, 1999, no pet.) (not designated for publication). Therefore, the statement in the majority opinion that the *Tovar* court "declined" to apply the common-law presumption is correct only to the extent that the court stated that it did not need to address whether the common-law presumption applied in that case. *See id.;* 208 S.W.3d at 40.

In *Tenngasco Gas Gathering Co. v. Fischer,* the Corpus Christi Court of Appeals affirmed the trial court's judgment in a condemnation case. *See* 653 S.W.2d 469, 471 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). In that case, through no fault of the parties, the latter part of the trial, including the rebuttal evidence and closing arguments, was not recorded because the court reporter suffered a nervous breakdown. *See id.* at 471–72. The court stated that this incomplete statement of facts was made complete by the trial court's certification of a narrative statement of the testimony of one witness. *See id.* at 473. The court then addressed the rest of the appeal, concluding (1) the trial court did not err in admitting certain testimony; (2) the evidence was sufficient to support the jury's verdict; and (3) the condemnor had the right of eminent domain. *See id.* at 473–76. On rehearing, the court stated that the absence from the statement of facts of certain rebuttal testimony and the closing arguments, which was not the subject of the trial court's certification, did not cause the court to depart from its original opinion, in part because there was no appellate issue relating to closing arguments. *See id.* at 476. The *Fischer* court did not discuss the cases regarding the presumption that omitted portions of the trial record support the trial court's judgment, and, in any event, its judgment affirming the trial court is consistent with these cases. *See id.* Furthermore, *Fischer* involved a different situation in which the incomplete record did not result from the agreement or request of the parties but from a circumstance beyond the parties' control. *See id.* at 471–72. In *In re M.S.,* a mother whose parental rights had been terminated asserted that her trial counsel was ineffective in failing to have a record made of voir dire, the charge conference, and closing arguments and that this failure harmed her because it made it more difficult for her to prove ineffective assistance of counsel. *See* 115 S.W.3d 534, 545–46 (Tex.2003). The Texas Supreme Court concluded that the mother had not shown any harm from her counsel's alleged ineffectiveness in failing to object to the failure to record voir dire, the charge conference, and closing arguments. *See id.* These five cases are not relevant or persuasive as to the issues in the instant case.

review than the latter. Accordingly, this court should apply the dual presumption that the omitted portions of the trial record are (1) relevant to the appellate issues and (2) support the trial court's judgment. In doing so, this court would reach the merits of the W & F Parties' issues; however, with relevant portions that support the judgment missing, the W & F Parties would have virtually no chance for success. That, however, is a foreseeable consequence of the W & F Parties' agreement that part of the trial not be recorded. **Does *Michiana Easy Livin' Country v. Holten* compel the creation of an exception to the common-law presumption?**

The majority pronounces that "this case is governed by" the Texas Supreme Court's recent decision in *Michiana Easy Livin' Country v. Holten*, which, the majority states, "compels" an exception to the common-law presumption for unrecorded closing arguments. *See* 168 S.W.3d 777, 781–84 (Tex.2005) (holding that appellate court need not presume that special-appearance hearing was evidentiary when all parties conceded that it was not); 208 S.W.3d at 36–37, 41. The majority's conclusion that *Holten* governs this case and is controlling is undermined by the language in *Holten* expressly limiting the analysis in that case to pretrial hearings. *See Holten*, 168 S.W.3d at 781–84 (stating "[i]t is difficult to state a bright-line rule regarding unrecorded *pretrial* proceedings . . . the absence of a reporter's record does not tell us whether a *pretrial* hearing was nonevidentiary, or evidentiary but not preserved . . . the trend has been away from full evidentiary hearings in open court for most *pretrial* matters . . . [p]resuming that most *pretrial* proceedings are evidentiary would . . . discourage this trend . . . otherwise, appellate courts should presume that *pretrial* hearings are nonevidentiary" (emphasis added)). Although, by analogy, some parts of the *Holten* court's analysis

arguably may provide some support for the majority's analysis, *Holten* is not on point and does not compel this court to create an exception to the common-law presumption for unrecorded closing arguments during trial. *See id.*

There are many reasons why *Holten* should not affect the analysis in this case. The *Holten* court held that it did not have to presume that the special-appearance hearing was evidentiary when all parties conceded that it was not. *See Holten*, 168 S.W.3d at 784. The case at hand does not involve the issue of whether a hearing was evidentiary; all parties agree that the hearing in question was the ultimate evidentiary hearing—the trial. The *Holten* court mentioned a trend away from evidentiary hearings in open court for pretrial matters; however, there is obviously no trend away from evidentiary hearings in open court for cases that are called to trial. *See id.* at 782–83. Furthermore, unlike the parties in *Holten*, all of whom agreed as to the issue in that case (whether the pretrial hearing was evidentiary), Cindy and Ricky do not concede that what transpired during closing arguments is not relevant to the W & F Parties' appellate issues. *See id.* at 784.

In *Holten*, the Texas Supreme Court distinguished its statement in a prior case that a party who fails to request the reporter to record a pretrial hearing risks waiving any complaint. *See id.* at 783 (distinguishing *Piotrowski v. Minns*, 873 S.W.2d 368 (Tex.1993)). The *Holten* court distinguished this case by pointing out that the parties in that case agreed that the hearing for which the record was lacking was evidentiary. *See id.* Likewise, *Holten* has no application to the case at hand because the hearing in question—the trial—was an evidentiary hearing at which

parties who fail to see that a record is made risk waiving complaints.

In deciding whether to presume that the unrecorded pretrial hearing was evidentiary, the *Holten* court found significance in the fact that the appellate rules formerly stated that the parties must request the court reporter to make a record; however, now Texas Rule of Appellate Procedure 13.1 states the court reporter must make a record unless excused by agreement of the parties. *See* TEX.R.APP. P. 13.1; *Holten*, 168 S.W.3d at 783. The majority relies on this rule and this part of *Holten* in its analysis. *See* 208 S.W.3d at 37, 41–42. This reliance is at odds with the analysis of this court in *Nabelek v. District Attorney of Harris County,* in which this court indicated that Rule 13.1 is void because it conflicts with section 52.046 of the Texas Government Code, which requires court reporters to make a record of proceedings only when requested to do so. *See* TEX. GOV'T CODE ANN. § 52.046 (requiring official court reporter to make record of proceedings if requested to do so); TEX.R.APP. P. 13.1(a) (stating that official court reporter must attend court sessions and make a full record of the proceedings, unless excused by agreement of the parties); *Nabelek,* —— S.W.3d at ——, 2005 WL 2148999, at *5 (indicating that Rule 13.1(a) is void because it conflicts with section 52.046 of the Texas Government Code); *accord Langford v. State,* 129 S.W.3d 138, 139 (Tex. App.-Dallas 2003, no pet.) (agreeing with *Polasek* case that Rule 13.1 is void because it conflicts with section 52.046); *Polasek v. State,* 16 S.W.3d 82, 88–89 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (holding, in en banc opinion, that Rule 13.1 is void because it conflicts with section 52.046 and because delegation of rulemaking authority to courts does not authorize courts to promulgate rules that conflict with the substance of existing statutes); *contra Smith v. State,* 114 S.W.3d 66, 70 & n. 1 (Tex.App.-Eastland 2003, pet. ref'd) (concluding that Rule 13.1 is not void); *Brossette v. State,* 99 S.W.3d 277, 284–85 (Tex. App.-Texarkana 2003, pet. dism'd) (same); *Tanguma v. State,* 47 S.W.3d 663, 670–71 (Tex.App.-Corpus Christi 2001, pet. ref'd) (same), *disapproved in part on other grounds by Valle v. State,* 109 S.W.3d 500, 508–09 (Tex.Crim.App.2003). The *Holten* court mentioned and relied on the change in the Texas Rules of Appellate Procedure reflected by Rule 13.1; however, the *Holten* court did not mention or address the conflict between this rule and section 52.046 of the Government Code. *See Holten,* 168 S.W.3d at 784. Nor did the *Holten* court mention or address the split among the courts of appeals as to whether Rule 13.1 is void, and, to date, the Texas Supreme Court has not resolved this issue. *See id.*

On the other hand, this court did address this issue in *Nabelek,* and its opinion in that case does not support the majority's reliance today on Rule 13.1. In *Nabelek,* the appellant asserted that there was reversible error based on the court reporter's failure to record a pretrial hearing, as required by Rule 13.1. *See Nabelek,* —— S.W.3d at ——, 2005 WL 2148999, at *5. The *Nabelek* court stated that, under Rule 33.1, parties generally have to preserve error regarding their appellate complaints by presenting them to the trial court and obtaining an adverse ruling. *See id.* The *Nabelek* court then stated as follows:

> Likewise, Texas Government Code section 52.046, which sets forth the general powers and duties of court reporters, provides that a party must request a court reporter to make a record of proceedings. TEX. GOV'T CODE ANN. § 52.046(a)(2) (requiring court reporter to attend court and make a record "[o]n request"); *see Polasek v. State,* 16 S.W.3d 82, 88–89 (Tex.App.-Houston [1st

Dist.] 2000, pet. ref'd) (holding rule 13.1(a) void and proper rule stated by Texas Government Code section 52.046(a)). Here, contrary to Nabelek's assertions, the record does not show he requested that the court reporter record the September 13, 2002 hearing ... By failing to request that the court reporter record the hearing or object to the reporter's failure to record ... Nabelek has failed to preserve these issues for review.

*Id.* (footnotes omitted). The *Nabelek* court stated that Rule 33.1 requires preservation of error as to appellate complaints and that, likewise, section 52.046 of the Texas Government Code requires parties who want a record made to request the court reporter to make one. But section 52.046 only requires this request if Rule 13.1 is void, as appellate courts in Houston and Dallas have held. *See Langford,* 129 S.W.3d at 139; *Polasek,* 16 S.W.3d at 88–89. If Rule 13.1 is valid, then no request for a court reporter would be necessary. Rather than give effect to Rule 13.1, the *Nabelek* court simply cited with approval the First Court of Appeals's en banc holding in *Polasek* that Rule 13.1 is void. The *Nabelek* court emphasized that Nabelek did not request the court reporter to make a record and stated in passing that Nabelek also failed to object to the court reporter's failure to make a record. However, if Rule 13.1 is valid rather than void, then all the *Nabelek* court had to do was note that no objection was made to the failure to record the pretrial hearing; there would have been no need to note section 52.046's requirement that a record be requested or to cite with approval *Polasek's* holding that Rule 13.1 is void. The *Nabelek* court based its conclusion that Nabelek failed to preserve error on his failure to request a record as required by section 52.046, thus indicating that Rule 13.1 is void. *See Na-*

*belek,* —— S.W.3d at ——, 2005 WL 2148999, at *5.

The majority does not explain why this court is not following its own recent analysis in *Nabelek.* Instead, the majority erroneously concludes that the *Nabelek* court did not address the issue of whether Rule 13.1 is void. *See* 208 S.W.3d at 41–42, n. 9. As discussed above, the majority's reading of *Nabelek* is incorrect. More critically, however, the majority does not say this court's analysis in *Nabelek* is unworkable or badly reasoned, only that the decision in the case turned on preservation of error and not on the merits of the Rule 13.1 issue. Even were the majority correct in its assessment, that would hardly justify unexplained inconsistency in this court's analysis and decisions.

Adhering to precedent fosters efficiency, fairness, and legitimacy. *See Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000). More practically, it results in predictability in the law, which allows people to rationally order their conduct and affairs. *See id.* Of course, there are times when continued application of a rule of law no longer furthers the interests it once served and "the general interest will suffer less by such departure, than from a strict adherence." *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 215 (Tex. 2001) (quoting *Benavides v. Garcia,* 290 S.W. 739, 740 (Tex. Comm'n App.1927, judgm't adopted)). In those circumstances, courts may revisit a prior precedent, providing a higher authority has not spoken on the subject. Even then, courts should not lose sight of the strong policies supporting the doctrine of stare decisis. For this reason, we are to adhere to settled rules of law "unless there exists the strongest reasons for chang[e]." *Benavides,* 290 S.W. at 740–41. When a court contemplates departing from precedent, it should carefully balance the reasons proffered for rejecting the precedent against

the very weighty considerations underlying stare decisis. The majority offers no such analysis today. Furthermore, even presuming for the sake of argument that *Nabelek* says nothing about the validity of Rule 13.1, today this court places importance on the change in the law created by the promulgation of Rule 13.1. Before doing so, the court ought to address why it believes the en banc First Court of Appeals and the Dallas Court of Appeals erred in holding that Rule 13.1 is void, and why this court erred in citing this line of cases with approval. *See Nabelek*, 2005 WL 2148999, at *5; *Langford*, 129 S.W.3d at 139; *Polasek*, 16 S.W.3d at 88–89. Because this court and others whose analysis this court has followed have indicated that Rule 13.1 is void, the majority errs in relying on Rule 13.1 to support its analysis. *See* 208 S.W.3d at 37, 41–42.

For all of these reasons, the *Holten* case is not on point and does not impact the analysis in this case. *See id.*

**Did the Individual Defendants verify a denial that they were doing business as "W & F Transportation"?**

The majority concludes that the Individual Defendants filed a verified denial of Cindy and Ricky's allegation that the Individual Defendants were doing business as "W & F Transportation." The petition on which Cindy and Ricky went to trial alleged that the Individual Defendants were "individuals doing business as W & F TRANSPORTATION." Most of the allegations in the petition refer to all three defendants collectively. The Lease Agreement attached to the petition is on the letterhead of "W & F Transportation."[8] This agreement describes the Lessee as "W & F Transportation," and E.H. Wilhelm's signature is next to the words "SIGNATURE OF THE LESSEE." The clerk's record contains the Individual Defendants' responses to requests for disclosure, in which they state that the names of the parties to the lawsuit are "W & F Transportation, Inc.[,] Elward & Margaret Wilhelm." In every pleading and motion filed by the Individual Defendants in our record, they describe the Individual Defendants as E.H. Wilhelm, Sr. and Margaret D. Wilhelm. The trial court's judgment, the Individual Defendants' motion for judgment notwithstanding the verdict, and the notice of appeal all denominate the Individual Defendants in this manner as well.

Texas Rule of Civil Procedure 93 requires a verified denial of, among other things, the following matters:

8. Texas corporations are required to have in their names one of the following words or an abbreviation thereof: "corporation," "company," "incorporated," or "limited." TEX. BUS. CORP. ACT. art. 2.05(A)(1) (Vernon 2003). One of the reasons for this requirement is to alert those doing business with the corporation to the fact that they are doing business with an incorporated entity. *See Lassiter v. Rotogravure Comm., Inc.*, 727 S.W.2d 8, 10 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). In the majority opinion, the court concludes that references to "W & F Transportation" are clearly references to "W & F Transportation, Inc." *See* 208 S.W.3d at 45. This interpretation is far from obvious and is contrary to the way terms are typically viewed and understood in Texas law. In fact, given the Texas framework and nomenclature for corporate entities, it is more likely that "W & F Transportation" would be interpreted as a reference to the Individual Defendants' unincorporated proprietorship, especially in light of their assumed-name certificate which was in effect at all material times and which was never abandoned or withdrawn. The court also states without explanation that counsel for all parties and all of the witnesses referred to "W & F Transportation, Inc." as "W & F Transportation." While there are many references to "W & F Transportation" in the record, in most cases it is not clear whether the speaker is referring to the corporation or the assumed name for the unincorporated proprietorship. The court appears to presume without justification that all of these references are to the corporation.

2. That ... the defendant is not liable in the capacity in which he is sued.

...

14. That a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged.

TEX.R. CIV. P. 93.

Cindy and Ricky's live petition asserted that the Individual Defendants were doing business as W & F Transportation. The evidence at trial showed that the Individual Defendants filed a certificate with the Harris County Clerk showing that the Individual Defendants were doing business under the assumed name of "W & F Transportation."[9] Many of the exhibits admitted into evidence at trial referred to the Individual Defendants' business as "W & F Transportation." In the answers on which they went to trial, the Individual Defendants asserted verified denials of various matters, including that the agreement attached to the petition is their written agreement or was executed by them. They also asserted a verified denial that they were liable in the capacity in which they were sued. They did not, however, assert a verified denial that they were doing business as "W & F Transportation."

The majority concludes that the verified denial as to capacity is sufficient to deny the allegations that they were doing business as "W & F Transportation." However, a review of the petition shows that Cindy and Ricky sought to hold the Individual Defendants liable in their individual capacities. To this end, Cindy and Ricky alleged, among other things, that the Individual Defendants were doing business as "W & F Transportation."[10] Following the jury trial, the trial court granted judgment against the Individual Defendants in their

---

**9.** The court seems to imply that creating a corporation with a name similar to a previously unincorporated business run by the owners of the new corporation automatically destroys the unincorporated business and precludes the principals from ever doing business as the unincorporated entity. *See 208 S.W.3d at 45–47 & n. 15.* This is not the law. *See, e.g., Rehab 2112, L.L.C. v. Audio Images Int'l, Inc.,* 168 S.W.3d 308, 311 (Tex.App.-Dallas 2005, no pet.) (holding that trial court could render judgment against defendant doing business under assumed names "North Texas MRI" and "White Rock MRI," despite the contemporaneous existence of limited liability companies whose names contained the same words followed by "L.L.C."). The court asserts that the First Court of Appeals, in *Negrini v. Plus Two Advertising, Inc.,* held that an assumed name certificate did not provide a basis for establishing individual liability after an entity became incorporated. *See 208 S.W.3d at 46, citing 695 S.W.2d 624, 631* (Tex.App.-Houston [1st Dist.] 1985, no writ). The *Negrini* court simply concluded, under the facts shown by the record from the bench trial, that the assumed-name certificate in question was not legally sufficient evidence to prove all the essential elements of a general partnership between the parties who signed the certificate. *See Negrini,* 695 S.W.2d at 631.

**10.** The majority opinion states that, during the charge conference, the parties discussed the fact that the court's charge referred to W & F Transportation, Inc. *See 208 S.W.3d at 45, n. 12.* This is not correct. Counsel for Cindy and Ricky never stated that the charge referred to W & F Transportation, Inc., and the court never indicated that the charge referred to W & F Transportation, Inc. In fact, when counsel for the W & F Parties requested a jury instruction that the charge only referred to the corporate defendant, counsel for Cindy and Ricky objected and indicated that the jury charge covered all three defendants. A review of the record of the charge conference shows that the only objection the W & F Parties distinctly pointed out to the trial court in this regard was their objection that the charge did not define "W & F Transportation" to mean "W & F Transportation, Inc." *See* TEX R. CIV. P. 274 (stating that "[a] party objecting to a charge must point out distinctly the objectionable matter"). Therefore, this is the only charge objection as to which the W & F Parties preserved error. *See id.*

individual capacities and denied their motion for judgment notwithstanding the verdict filed in their individual capacities. The Individual Defendants have appealed to this court in their individual capacities. Therefore, their denial that they were liable in the capacity in which they were sued was a denial that they were liable in their individual capacities rather than a denial that the Individual Defendants were doing business as "W & F Transportation." Their intention not to assert a verified denial of the latter is further corroborated by the fact that the affidavits by which the Individual Defendants verified their denials were executed by "W & F Transportation By: E.H. Wilhelm Sr." and by "W & F Transportation By: Margaret Wilhelm." Therefore, the Individual Defendants' verification of their answers was an act of doing business as W & F Transportation rather than a denial that the Individual Defendants were doing business in this name.

By failing to verify by affidavit a denial of Cindy and Ricky's allegations that they were doing business as "W & F Transportation," the Individual Defendants failed to deny this matter, which was admitted by operation of law without the necessity of proof. *See* Tex.R. Civ. P. 93(5), (14); *Rhodes v. City of Austin*, 584 S.W.2d 917, 924 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.); *Condry v. Mantooth*, 460 S.W.2d 513, 516 (Tex.Civ.App.-Houston [1st Dist.] 1970, no writ). Therefore, the Individual Defendants are individually liable for all the liability of W & F Transportation. *See, e.g., A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 436 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (holding that person doing business as "B & S Construction" was individually liable for obligations of "B & S Construction"). Thus, in addition to failing based on the absence of a complete record, the Individual Defendants' challenges in the third and fourth issues also lack merit because the charge submitted the liability of the Individual Defendants doing business as "W & F Transportation." Accordingly, the court should overrule the third and fourth issues.

Instead of overruling these issues, the court sustains them (as to the Individual Defendants) based on its erroneous conclusion that the verified denial as to capacity was sufficient to deny the assumed-name allegation. *See* 208 S.W.3d at 46–47. The majority relies on a Texas Supreme Court case which states that, "[i]f the jury finding is ambiguous or unclear, the courts must try to interpret the finding so as to uphold the judgment." *First Fed. Sav. & Loan Ass'n of Dallas v. Sharp*, 359 S.W.2d 902, 903 (Tex.1962); *see* 208 S.W.3d at 44. One obvious way to interpret the jury's findings to uphold the trial court's judgment would be to conclude that "W & F Transportation" includes the Individual Defendants because they admitted they were individuals doing business as "W & F Transportation" and because the jury had before it a certificate so stating. The court indicates that the Individual Defendants ceased doing business as "W & F Transportation" in the past and that all recent transactions and references were clearly to the corporation. *See* 208 S.W.3d at 45–47. This conclusion is not supported by the record, and furthermore, counsel for the W & F Parties stated during the charge conference that the Individual Defendants "have a corporation and they have an assumed name with other records still out with W & F Transportation—their heading is W & F Transportation." Thus, counsel for the W & F Parties admitted at trial that the Individual Defendants were still doing business as "W & F Transportation." This court should interpret the jury findings as assessing liability as to the Individual Defendants based on their admission (both by their failure to file a verified denial and by counsel's statements

at the charge conference) that they were individuals doing business as "W & F Transportation" and based on the assumed name certificate. This court errs by concluding that "it is clear to us that the jury's findings as to 'W & F Transportation' referred to W & F Transportation, Inc." [11] 208 S.W.3d at 44–45.

## Conclusion

Under the applicable common-law rule, this court should presume that the omitted portions of an incomplete trial record are relevant to the appellate issues and support the trial court's judgment because the common-law presumption has not been reversed by a recognized exception to this rule. The court errs in declining to do so and instead creating an exception to the general rule for unrecorded closing arguments. Likewise, the court also errs by failing to interpret the jury's findings so as to uphold the trial court's judgment and in concluding that the jury could not possibly have understood "W & F Transportation" to include the Individual Defendants. Applying existing law, this court should overrule the third and fourth issues based on the common-law presumption and, in the alternative, on the Individual Defendants' failure to deny Cindy and Ricky's allegations that the Individual Defendants were doing business as "W & F Transportation." For these reasons, the court should overrule the motion for rehearing in its entirety and affirm the trial court's judgment.

---

[11]. The W & F Parties assert that *Perez v. Weingarten Realty Investors* is on point. *See* 881 S.W.2d 490, 493–94 (Tex.App.-San Antonio 1994, writ denied). That case did not involve a partial record, and it affirmed the trial court's refusal to submit questions proposed by the plaintiff because they did not contain substantially correct wording. *See id.* The *Perez* case is not on point.